Appeal number three of the morning, 22-1862, RAI Strategic Holdings v. Philip Morris Products. Mr. Castanius, welcome back. Thank you, Judge Chen, and may it please the Court. We conclude our day together with our appeal from the Board's post-grant review decision on our 542 patent. There are two issues here. One is written description and one is obviousness. I'm going to take the written description issue first. The Board erred legally by holding that claims 10 and 27 lacked written description support. These claims set forth a limitation about the length of the heating member vis-à-vis the length of the disposable aerosol-forming substance. This is, again, a structural limitation. This is not a chemical claim. This is not a pharmaceutical claim. It is a simple structural measurement limitation here. Can I ask you why, when you read the specification in here, you read a lot of ranges, sub-ranges of ranges, 75-125, 85-115, 95-105, 75-100, and so it feels like there's a theme growing within all of these chosen, described ranges that all touch and cover 100%, which makes intuitive sense. You'd want your coil to reach 100% of the medium that you're trying to heat up. But then when you reach the claim, you see the claim, it's almost like a plot twist. It takes a hard left turn. Now we're no longer anywhere near 100. We're talking about 75-85. And so the first question is, why did you draft a claim that just goes for this sliver on the low end of 75-85? Subjectively, I cannot answer that question, Judge Chin, because I don't draft claims. You didn't ask anybody, why 75-85? Why are you letting the competitors get away with having a heating coil that's 100%, the full length of the medium? These are, of course, only with regard to these particular dependent, I'm sorry, dependent claims, but this limitation. So what we're doing, we're talking about claims here that are narrower than the independent claims from which they depend. It's only claims 10 and 27. So I think, again, I'm speculating here because I don't know objectively, or subjectively rather, what was in the minds of the drafter. But objectively, it looks to me like they said, maybe we just want to claim this particular range, this narrower range. Are you aware of any reason why any of those particular ranges are different in kind or more desirable or less desirable than one another? And is there any evidence on that? Not on the face of the patent, and I'm right now at a loss. I'll be corrected by my colleagues if I'm wrong, but I'm at a loss for why any particular range is better, except for perhaps the reason that Judge Chin put forth, which is you want to heat this particular portion of the cigarette device. But with regard to whether this is a written description problem. This may be a bit of a theme, but I understand there was an original claim, Claim 39, that claimed 75 to about 125% of the length, and that claim was canceled. You don't have any information on that? Off the top of my head, I don't remember why that claim might have been canceled. I just don't. I'm sorry. If it becomes increasingly relevant, we'll look into that and get an answer back to the court. There is nothing in the prosecution history that explains it. I don't think so, Judge Stoll, but I think this is really under this court's written description precedence a relatively straightforward legal error on the part of the court. We don't have a lot of case law, actually, on when is it appropriate to claim a sub-range of a described range into the specification. You do have a line of cases, and actually it dates back to Judge Rich's Wertheim case from the CCPA. And I think Wertheim really states the rule of law that was not followed here. So what Wertheim says is that where there is a range, I'm trying to find the exact language of it, but it basically says that where the claimed range is narrower, then it's particularly incumbent on the patent challenger to explain why there's a meaningful reason. It's not our burden as the patent owner. It's a burden on the patent challenger to show that this is really something that's different. And here, because we're talking about this. Just to make clear, there was no challenger or anything. This was an ex parte application. In that case, that's right. It would have been the board in that circumstance. But I think Wertheim has been applied in inter partes as well as district court litigation since then. But I think this is the point that I want to get at, is that even with regard to that first disclosed range, the about 75% to about 125% of the length of the inhalable substance medium 350, that's in Appendix 91, Column 39, Lines 43 to 45, what does that tell the world what these inventors possessed? It said, we possess having the heating element be 75%, 76%, 77%, 78%. That doesn't apply in all cases, right? No, it doesn't. We have to be very careful about that. Because there are cases in our case law that have said, later, or if there's some other evidence that shows that, hey, 75 is fantastic. They discover, for example, there's a case, I think it's Barrett, actually, where there was some evidence that at a certain temperature, below a certain temperature, it wasn't disclosed in the spec, but there was a spec from which they were copying the claims, and it said if the temperature was below a certain range, in other words, gave reasons for why you'd want to have the sub-range. Because outside of the sub-range, the invention didn't operate as well. And if you're talking about a chemical composition, a pharmaceutical composition patent, or as Judge Rich, I think, mentioned in the Wertheim case, a genus patent, where each of the species that are claimed within the genus are themselves considered to be individual inventions, then this may be a different outcome. But this one is factually simple. It is a physical measurement. How long should the heating element be? And this range says anything. It's not just, it has to be... So your understanding is adjusting the length of the heating member does not change the invention, is that what you're saying? I think that's right, because the invention is disclosed much more broadly in the spec, but it says that it can be anywhere from 75% to 125% in that first disclosure. What if the range hypothetically said, hey, to do bulk heating you can do anything between 51% and 500%? I know this does violence to your mind. No, no, I could work with hypotheticals. And then all of a sudden the claim for some reason says 115 to 117. And those two numbers don't pop up anywhere in the specification. Wouldn't it feel uncomfortable to say, yes, the inventor had that specific invention in mind when he disclosed what he disclosed in the spec? I think it would only feel uncomfortable if I knew from your hypothetical that there was a specific reason for 115 to 117 that my opponent was bringing out to say, oh, well, no, this is something that's special. And that's really the Wertheim point, which is that you can take the hypothetical and stretch it that way. Of course, it's not our case, and I don't need to say that because that's the nature of a hypothetical. But there's nothing particularly special about 75% to 85% other than it narrowed the scope of what the patentees were claiming. What about endiveor? Sorry. No, you go ahead. Sure, endiveor. What about endiveor? I mean, Judge Chen's hypothetical to me sounded a bit like endiveor where there was a different result. In endiveor, there were some ranges disclosed in the spec, but I think that some of the opinion's outcome is a result of some language in the specification about any desired level of polymer could be used. So, therefore, somehow when the range disclosed is really broad, but what's claimed is really narrow, it might cause someone to think that a person with a very narrow scale didn't have that smaller range in mind. Right. I think, of course, endiveor is exactly what I'm talking about with regard to a pharmaceutical invention. That's one of those, I think, dissolvable film that gives out a pharmaceutical when you put it on your tongue, for example. Those are areas where the particular percentage of polymer really is crucial to making sure that there is drug delivery coming out of that little piece of film. But let's assume for a minute that I don't agree with you on that. Then what would you do? Do you have another reason for distinguishing endiveor? Well, sure. In endiveor, there was not, except for the potential of 100 weight percent, any upper bound in the claims at all, or any upper bound in the specification at all, rather. Here, there were upper bounds. But again, here, I guess I'd answer Judge Chin your question by saying on these facts, there wouldn't be any difference from saying about 75 to about 125% of the length, and if the patentees had actually said about 75 comma about 76% and so on. I think that would be, you'd be able to say about all of these lengths are possessed by the inventor. And that was the only ground on which claims 10 and 27 were poured out in this case. So what I'm trying to figure out is it's your view that although we've said over and over again that inscription is a very fact-intensive, context-specific situation and there's no right-line rules anywhere, to your view, if you can describe the waterfront, claim a super-broad range, you get to claim any version of a sub-range as long as the other side cannot prove that there's some kind of performance difference between the sub-range across the entire waterfront range. And that sounds like itself like a right-line rule. I think that latter part of what you said, Judge Shinn, reads a little too much into what I was saying, because all I'm saying is what Wertheim says, is that the challenging party, whether it be in this case PM or in Wertheim itself, the board, the office, quote, has presented sufficient reason to doubt that the broader described range also describes the somewhat narrower claimed range. The board didn't find that kind of reason to doubt at all in this case. PM didn't present it, the board didn't find it. It was wrong here as a matter of law. Do you want a vacating remand or do you want a hard reverse? I think a hard reverse on this is appropriate. There'll have to be probably a vacating remand because these claims also are subject to an obviousness challenge that was not reached by the board. But if I could go to the obviousness issue very quickly, and I see I'm already into my rebuttal. We'll give you a little extra time. We spent a lot of time on the description, but not a lot more time. I will take only what I am given. This is the issue that I previewed at the beginning of our three arguments today, where it's the Robinson patent and the paragraph that talks about design choice and design flexibility, or actually design choice is the language of Robinson. And it's the language at appendix 2806 in the Robinson patent here that is exactly the same language that was the subject of one of PM's arguments, which this court rejected, which the ITC rejected and this court affirmed, I should say it that way, in the prior appeal. That single paragraph was argued by PM in the ITC case and effectively re-argued here, but this time found by the board, to be an invitation to go look for something else in the prior art entirely. Go get grime, go get grime seeder and substitute that in. That's not what this passage reasonably says. It's not the sort of language that a reasonable mind would rely upon to conclude that this was an invitation, to use the board's term. Are you talking about the language in our prior decision that's relied on the patent specification statement that selection of the power source and resistance heating elements can be a matter of design choice? Yes. But that case doesn't address the issue here. That case only says that that sentence that I just read doesn't talk about the amount of resistance. And if you look, Judge Stoll, that's the sentence. I mean that it doesn't talk about the placement of the resistance elements. That's all it says. Well, I think that the court actually said a little more than that with regard to that. It said the commission in this case concluded that the, and this is quoting the commission here, as quoted in this court's opinion, the design choices described in the 123 patent actually refer to the amount of resistance and the resistance heating elements and the voltage and current provided by the power sources, not the location or placement of the heating elements. So there is actually a commission finding that was noted by this court and the court affirmed that decision that says that this refers to the three elements of Ohm's Law. It's not a broad invitation to substitute different heater designs. That was the case with regard to the argument that this court rejected in the ITC case that the Morgan heater should be added on because of this supposed invitation, but it's the same argument that's being made here. The argument that's being made here is that this exact same paragraph says, go find another heater. Never mind what we've said about heaters. Go find another heater in the art, whatever you like. That's not what this paragraph says and this court's already confronted that. Well, even if all that is true, then at best for you this reference, Robinson, is agnostic about invitations to modify itself. And that's just like any other common reference in a 103 analysis. And here we have Grime, which Grime itself talks about the advantages of its heater. But the board... And the board relied on those advantages, identified those advantages. But the board did not find Robinson agnostic. And I don't think that this court can substitute its own judgment for the board in an administrative review and say, well, Grime alone is good enough. The board, frankly, fumbled the interpretation of the Robinson paragraph here. It's not an invitation to go out and find a heater somewhere else that you might like. And that's all the board relied on here. That's why we do not stray from the substantial evidence standard on this. Thank you. We'll give you some time on this. Thank you. We appreciate it. That's it. Oh, we have a new player. Thank you, Your Honors, for letting us stay in the same places. And I took the long way around. May it please the court. I would like to start with written description because that seems to be the tougher issue here. I think you hit it on it, Judge Chin, that when the written description gives a broad range, like 75 to 115, that is not free license to then go claim any subset of that. Could Reynolds claim... Can I ask you one preliminary question? Yes, Judge Cunningham. There was a discussion between Judge Chin and opposing counsel about the possible disposition, whether it's reverse or vacating remand if you lose. What do you think about disposition? Can you speak to that in that context? Yeah, definitely. And as my friend noted, vacature and remand would be appropriate, number one, because there was the obviousness issues that weren't raised here. And there's tension with that, especially in the written description issue. Conversely, with the obviousness, there was written description for Claim 1 and so forth. So we had two grounds that went all the way across all claims, and the board's decision kind of went one ground here and then one ground here, so we do need to go back. And that tension is really a great point that I wanted to make. What it sounds like my friend is asking for is for us to kind of flip the way we look at written description versus anticipation and obviousness when it comes with the range. And this court explained in Vascav... What if the range disclosed had been something like 90 to 100, and then the claim says 95%? Would there be written description support for a claim of 95% of the length of the substance needed to be heated up? I don't think there would be, Your Honor. It goes on for facts here, of course. But if the disclosed range, and I think you said 90 to 100, and they just claim 95, there's no indication that the inventor had possession of 95% as the invention. It would be a lot closer case than this one. And we're not there. And that's the point I want... When it's a measurement... I'm just having a hard time following this. When it's just a measurement, the length of something, why wouldn't something that falls within the middle of 90 to 100 be sufficient? Why wouldn't a person of ordinary skill in the art, going back to the basic area test, why wouldn't they understand that to have been possessed by the inventor? Obviously, the individual product that's made is not going to vary from 90 to 100, so why wouldn't 95 between 90 and 100 be disclosed? I think the reason is, Your Honors, would be that it would be disclosed from the portion... When I said earlier, flip it, if we were talking about anticipation or obviousness, of course 95% discloses the range 90 to 100. Now we're flipping that. There's no criticality analysis here that we needed to do. The only disclosure... Let me tighten the hypothetical. What if it was the inventor said, We have a heating coil here. We want it to be very close to the full length of the substance needed to be heated up. In my mind, it can be anything between 90% to 100% of the length in whole numbers, so 90, 91, 92, etc., all the way up to 100. That's what it says in the spec. Then in the claim it says 95. That's a problem in your mind? No, no, not at all, Your Honor, and that's really the difference here. When you have the facts like we have here, where the disclosure is 75 to 125, 80 to 120, etc., and going smaller, and now we have this other range over here, that's a very different fact situation. The fact situation you just gave me just now is there's all sorts of evidence that substantialists could support a decision that there is written description. When you say it's a very different factual situation, are you implying that there's some type of difference in the invention depending on which part of the range you're in? In the invention itself, no, Your Honor, but there's a difference in what the inventor possessed as his invention based on the four corners of the specification. Isn't it viewed from the perspective of the person, we just don't look to see whether verbatim something is contained in the specification, right? Correct, Your Honor. The best disclosure might be there's one that hasn't been mentioned, I think by you, is 75 to 100. So 75 to 100 is disclosed as a range. I think it's in one of the earlier columns, maybe column 4 or something in the specification. But I, a person of ordinary skill in the art, in this case, think that 75 to 100 could include 85. Well, first, I don't want to fight Your Honor's hypothetical, but I don't think there's any disclosure of 75 to 100 of the heating member. I think there's a disclosure of 75 to 125 of the heating member, and I think there might be disclosure of 75 to 100 of the heating member when it is in a different embodiment, namely the embodiment where the heating member is part of the actual device. Here, maybe I'm reading this wrong. Look at column 5, lines 20 to 24. Correct, Your Honor. And if you look at column 5, the line, and you're starting at column 11, in other embodiments the heating member can be a component of part of the cartridge. So that's a completely different embodiment. We're in an embodiment where the heating member is something that is inserted into the cartridge. So, yes, when the heating member is part of the component cartridge, it can be in that 75 to 100%. And that's why that range was not before the board. The only ranges that were before the board were in the paragraph before that, that starts back on column 4, 75 to 125%, where the cartridge is inserted into the receiving chamber, and that allows the heating member to be, in effect, be inserted into the device. Do you have any evidence that, I realize there's a lot of different subranges claimed, do you have any evidence that there's differences in performance or advantages or that it operates better or anything under those different subranges? No, Your Honor. That issue didn't come up, and as my friend noted, he didn't know of any, we don't know of any. But we're not in a position here where we're in the obviousness, anticipation, or in the obviousness... But we are living in a Wertheim world, right? We are, Your Honor. And Wertheim says, basically, the burden is on you to prove the lack of written description. And part of that burden is to explain and identify what is perhaps unique in performance or results of the claimed subrange compared to what was described in the broader range in the application. That seems to be straight out of what Wertheim is calling for, and I don't think that was the way to structure your written description argument here. I don't think that's quite exactly right, Your Honor, and here's why. In the petition, we explain that the only relevant disclosures for the heating member in the embodiment, where the heating member is inserted, or the cartridge is inserted over the heating member, all of the ranges go over straddle 100%. And that was the invention. It is about 100% with this factor on both sides. And in reply, pardon me, in response, Reynolds came back and said, well, there's 85% as a lower value. So when we explain in the petition, as Dr. Dewey explained, one of skill in the art would understand that there's no disclosure. Any point he discussed, this is at appendix 26001. This argument, though, forces us into an ipsis verbis kind of world where you have to actually say the magic numbers that you're claiming in your specification, and we've already rejected that idea. I don't think that's what the Board did, and I don't think it's there. The Board's looked at the evidence that was before the Board, and I'll go back. All Reynolds put forward and forwarded the Board. We explained you had all these ranges surrounded by 100, and then Reynolds came back and said, well, 85 is the starting point. Is there anything that shows that 100's important? You know what I mean? I don't see anything in the specification that talks about the significance of the ability to go beyond the length of the tobacco. Well, as Dr. Dewey explained in his testimony, which we cited in our petition, and that's at the petition is pages 8, 148 through 8, 151, and Dr. Dewey's testimony is also cited there, and the Board cited it too, appendix 2660 to 2661. We explained that one of skill in the art would understand from this disclosure of these ranges, all hovering around 100, that the idea of this bulk heating, and he compares it to segmented heating. He had segmented heating where you do small parts. Yeah, it's like 5 to 50%. Exactly. And then you had these big ones that do about all of it, and each one, it gave you this range. He didn't need to go any further, but you could think of, you know, I would hypothesize the idea is that it's called bulk heating because you're heating the bulk. 75 to 85% is way off on the left end. There's nothing there. But technically, the inventor didn't say 75 to 125. That means you could have one coil that's 125%, and that meets what was contemplated. You could likewise have a coil that's 75%, and that would likewise meet what was contemplated in the spec. I agree with you, Your Honor, for infringement, for anticipation, and for obviousness. But for written description, as this court explained in Vasquez, it's a different analysis. And this court has never had, never held, that the full range is all you need. If that was all that you needed, then we wouldn't have had as we had in every single case that goes. What about Wertheimer? Wertheimer, Your Honor, the range was 25 to 60%, and they cut it short. They cut the range. They moved the 25. This was the disclosed range, 25 to 60. We had an experimental value of 36%, which is about 35, so they said 35 to 20. I'm sorry, but I didn't see the analysis in Wertheimer rely on that experimental number of 36%. The analysis seemed to be, is this 35 to 60 part of the Wertheimer invention, or is he claiming a different invention than what he contemplated in the spec? And this sub-range of 35 to 60, the court concluded, is part of Appleton's invention, which was anything 25 to 60. And there's no evidence in the record that suggests that the claimed range is somehow performing differently or reaching different results than the more broad disclosure. I mean, that just seemed to be, if the burden's on the PTO, and the PTO didn't meet its burden, that seems to be kind of an open-and-shut analysis. I don't quite read it that way, Your Honor. I think if you go to Wertheimer, it's page 264, right before the end of page 265, where they start talking about the claims. They say it claims a solid range of 35 to 60, which is within 25 to 60, but then they go on and they say that what those of skill in the art would expect from 34 and 35 are different, and that's hearkening back to the earlier point, that there was a 36% disclosure. And that disclosure that they're analyzing there is on page 262. The disclosure is, until a concentration of 25 to 60% solid matter is reached, examples in each disclosure of specific embodiments having solid contents of 36 and 50. So I think that's the only way to read this, and this Court has never held that a broad disclosure is sufficient written description support. And in fact, every single case that we have where we've cut the range short, every single case that we have, there's always been a specific example. Do you think it depends on the field of the invention? Like, is it different for a mechanical field versus, like, a chemical field, like, in terms of how it comes out on written description? I think that it will necessarily be part of personal ordinary skill in the arts analysis, Your Honor. And that's what we have here. We have Dr. Deavy's testimony stating when a skill in the art would not look at the beginning of the range as 85%, because that's what my friend pointed to. He said the beginning of the 85% range was enough to shut down the 75%. Can I ask you a related question? I mean, similar to Judge Cunningham's question. We do obviously have to look also at what's being measured, right? And the implications of it. And here it's the length. It's the length of something. And how does that play into it? I mean, I would think that in many circumstances, you know, length of an element where there's no disclosure or understanding of how that length changes how the invention works, that's something that we'd have to take into account as well in the fact-finding game. Well, I think the analysis of how ordinary skill in the art would look at it, Your Honor, would take that into account. And that's what we have here with Dr. Deavy's testimony. He explains that all of the relevant ranges are straddled on 100%, and that one of skill in the art would not think that the inventor was in possession of the narrower range, 75% to 85%. That's what we have in the record, and that's the substantial evidence to support affirmation. And the other point I want to keep making is in every single case where we've cut short a disclosed range, there's always been a discrete example or an experimental example. So when you take even the cases that are best for Reynolds, say, Nalpropion, I mean, that case, in essence, just said, look, you have these two tablets. They have their dissolution rates, and it gave you the lowest one to the highest one, and that's how they did it. Are you familiar with the application of laser? It's part of a laser CCPA case from 1977. I'm sorry, Your Honor, I don't recall it being cited. Okay, yeah, it wasn't cited. But it's similar to the facts of your time. Can you speak on the 1.3, the Robinson-Grimes combination? I'll give you just two minutes, and then we've got feedback to... Yes, Your Honor, two points. One is, I think, Your Honor, we're right. We don't need the express invitation in the primary reference. The board seemed to rely on it pretty heavily, though. They did rely on it pretty heavily, Your Honor, but I do want to make the point here that this is very different than what the ITC stated. What the board looked at was not just that Column 28 analysis, but also the Column 27 analysis right before it in Robinson, where Robinson explains that, one, a skill in the art of understanding could change the shape and size of the heating element, including elongating it so that it could pierce into the tobacco. And every time the board talked about the design choice, it also had that quote. And as we explained in the petition and in Dr. Deavy's testimony, that was crucial because there was no disclosure in the patent in Robinson how to make a heating element strong enough to pierce into the tobacco. And the board noted in its decision on page... I think it was at page 829 that the only... Pardon me, pages 827 to appendix 28, that the only disclosed materials were yarn and metallic cloth. So Dr. Deavy explained, well, one, a skill in the art would have to look elsewhere in order to fashion an appropriate heating element. So the board, every time it discussed the design choice, first...not every time, at least twice on page 828 and once when recounting our arguments, first relied on the can-be-altered language and then relied on the design choice. The second issue is that we had two different issues, one before the ITC and one before the board. As my friend noted, in the ITC, the issue was would it have been obvious to modify Morgan, Morgan having a circumferential-placed heaters and move them to the place of Robinson. And so the issue was... And I think this is the court's exact language on page 1346 of that ITC decision. Quote, the commission explained that the 123 patents disclosure did not support Philip Morse's assertion that heating element placements was a simple design choice or that there was a finite number of known solutions for such placements, end quote. And so the issue there is whether or not the placement was a simple design choice. So between those two things, I think we have very different issues before this court in the ITC case than we did before the PTAB. I see my time is more than up, Your Honor. Thank you very much. And should we ask the court to affirm or if not, vacate and remain. Okay. Thank you, Mr. Strang. Right? Yes, Mr. O'Keefe. Give Mr. Cassano a few minutes. Three. Thank you, Your Honor. Judge Shen, we are in Horthine World. It required them to present, quote, sufficient reason to doubt that the broader described range also describes the somewhat narrower claimed range. All they have is lawyer argument. There's nothing that they pointed to in the record. We certainly haven't been able to find anything in the record that suggests that this is a different invention that we've claimed. Do you agree that the references in the spec of 75 to 100, 90 to 100, aren't really relevant here because that's really going to a different embodiment than the one that's claimed here? No, I don't think that's entirely right here. With regard to those various embodiments here, they're all talking about the types of heating that can go on here. The 75 to 100% range has to do with a further embodiment of bulk heating. And that's claimed in the set... There are further embodiments where it's about 80 to about 100%, about 90 to about 100%, about 95% to about 100%. And, of course, in the area where we pointed out the broad range of 75 to 125%, there are other narrower ranges as well, starting at about 80, about 85, and about 90, and then coming down. So that embodiment you were talking about with the 75 to 100, that would fall within the scope of claim one? I think it would. And even if it wouldn't fall within the scope of claim one, it certainly is a teaching that helps understand the notion of heater length vis-a-vis the combustible or potentially combustible material length. I thought I heard my friend misspeak in citing to you pages 8, 26, 60, to 61. I thought I heard him say, and I could be wrong here, so I'm not casting aspersions, but I thought I heard him say that that was the board talking. That was actually their expert, D.D., but that language was not embraced by the board in this case. The cases that deal with ranges don't require in any way, nor can that requirement be teased out, that in addition to a range, you have to have a single specific example. And, in fact, that wouldn't make much sense when you're talking about the disclosure of a particular range. Finally, with regard to Robinson, Robinson spec says what it says, and this court has said that it has upheld the commission's determination that that's a reference to varying the parts of Robinson that are intrinsic, that deal with Ohm's Law. It does not, however, constitute an invitation to go find another heater somewhere else because the person's ordinary skill might want something else. Last point, there was 28-day practice in this case. My friends filed a letter right before our reply brief was due arguing that this case could be affirmed on the known technique theory. I didn't hear that from them today, so we'll rest on the reply brief where we answer that. Okay, thank you. Unless the court has further questions, thank you for your indulgence and your stamina is the right term. The court thanks the attorneys in these appeals. The case is submitted.